UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

MARK KINDER,                              )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )   Case No. 1:16 CV 7 ACL
                                          )
NANCY A. BERRYHILL,[1]                    )
Acting Commissioner of Social Security,   )
                                          )
                    Defendant.            )

## MEMORANDUM AND ORDER

Plaintiff Mark Kinder brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Kinder's multiple severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the reasons discussed below, the decision of the Commissioner will be affirmed.

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

# I.  Procedural History

Kinder filed his application for SSI on August 19, 2012.  (Tr. 148-49.)  He alleged that he became disabled on June 19, 2012, due to neck and back problems, anxiety, depression, possible high blood pressure, right shoulder pain, numbness in his left leg and feet, general weakness in his lower body, and "extreme pain all over."  (Tr. 148-49, 243.)  Kinder's claim was denied initially. (Tr. 162-65.)  Following an administrative hearing, Kinder's claim was denied in a written opinion by an ALJ, dated September 12, 2014.  (Tr. 13-21.)  Kinder then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on November 18, 2015.  (Tr. 9, 1-5.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Kinder argues that the ALJ erred "in failing to provide an RFC supported by substantial evidence in that the ALJ did not properly weigh the opinion of the treating nurse practitioner and did not perform an adequate credibility analysis before discounting Kinder's reports of limitations."  (Doc. 17 at 8.)

## II.  The ALJ's Determination

The ALJ found that Kinder had not engaged in substantial gainful activity since his application date of August 17, 2012.  (Tr. 15.)

In addition, the ALJ concluded that Kinder had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, anxiety, and migraine headaches.  *Id.* The ALJ found that Kinder did not have an impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

As to Kinder's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb ramps and stairs, and crouch. He should never climb ladders, ropes, or scaffolds, kneel or crawl. He should avoid concentrated exposure to vibration and hazards such as unprotected heights and dangerous machinery. He should avoid moderate exposure to irritants such as fumes, odors, and strong chemicals and fresh paint. He is capable of performing simple, routine tasks in a low stress work environment, which is defined as where there is only occasional contact with supervisors, co-workers, and the general public, and only occasional workplace changes. He should be able to sit or stand for 1-3 minutes every hour while remaining at his workstation.

(Tr. 17.)

In determining Kinder's RFC, the ALJ found that Kinder's allegations regarding his limitations were not entirely credible. (Tr. 18.) The ALJ also discredited the opinion of Kinder's treating nurse practitioner Kathleen Arnzen, FNP. (Tr. 19.)

The ALJ found that Kinder was unable to perform any past relevant work. (Tr. 20.) The ALJ noted that a vocational expert testified that Kinder could perform jobs existing in significant numbers in the national economy, such as electrical accessory assembler and bench assembler. (Tr. 21.) The ALJ therefore concluded that Kinder has not been under a disability, as defined in the Social Security Act, since August 17, 2012. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income filed on August 17, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

# III.  Applicable Law

## III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). A reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the

medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir.

2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§

404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

Kinder argues that the RFC formulated by the ALJ is not supported by substantial evidence because the ALJ did not properly consider the opinion of treating nurse practitioner Ms. Arnzen, and failed to properly consider Kinder's credibility.   The undersigned will discuss these claims in turn.

On December 30, 2013, Ms. Arnzen provided two opinions—a Medical Source Statement-Physical ("Physical MSS") and a Medical Source Statement-Mental ("Mental MSS"). In the Physical MSS, Ms. Arnzen expressed the opinion that Kinder could lift or carry less than five pounds; could stand or walk continuously for fifteen minutes, and could stand or walk a total of less than one hour in an eight-hour day; could sit continuously for fifteen minutes, and could sit a total of less than one hour in an eight-hour day; could push or pull a limited amount; could never climb, balance, stoop, kneel, crouch, or crawl; could occasionally reach, finger, and see; should avoid any exposure to extreme cold, weather, wetness or humidity, dust or fumes, vibration, hazards, and heights; and should avoid moderate exposure to extreme heat.   (Tr. 388-89.)   She also found that Kinder would need to lie down every fifteen minutes for ten to fifteen minutes during an eight-hour work day to alleviate his symptoms.   (Tr. 389.)

In her Mental MSS, Ms. Arnzen found that Kinder was extremely limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule

and maintain regular attendance; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistence pace without an unreasonable number and length of rest periods; interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation. (Tr. 391-92.) She indicated that Kinder was markedly limited in his ability to understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and set realistic goals or make plans independently of others. *Id.* Finally, Ms. Arnzen found that Kinder was moderately limited in his ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, and make simple work related decisions. (Tr. 391.)

The ALJ addressed Ms. Arnzen's opinions as follows:

> She may be sympathetic to the claimant (see *Hofslien v. JoAnne Barnhart*, 439 F.3d. 375, 7th Cir 2006), but that does not change the fact that her conclusions are not linked to medical evidence; she builds no evidentiary bridge between her medical findings (as opposed to simply a diagnosis) and a particular work related limitation, and her conclusions are not supported by the actual medical findings of mostly normal strength, sensory, etc. with only mild to moderate medical findings (subjective complaints of pain, diminished range of motion and tenderness in the neck and lumbar spine); as a result, the claimant has not met his burden of demonstrating he would be unable to perform various mental and physical work functions.

(Tr. 20.)

The Social Security Administration separates information sources into two main groups: "acceptable medical sources" and "other sources." It then divides "other sources" into two groups: "medical sources" and "non-medical sources." "Acceptable medical sources" include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources, *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). "Other sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d). "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939. "[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*; 20 C.F.R. §§ 404.1513(d), 416.913(d).

In this case, the ALJ considered Ms. Arnzen's opinions, but accorded them little weight because she found that the extreme physical and mental limitations were not explained and were inconsistent with the medical evidence. (Tr. 20.) These findings are supported by the record.

Ms. Arnzen saw Kinder approximately monthly from April 2013 through May 2014. (Tr. 396-422.) On Kinder's first visit in April 2013, his chief complaints were high blood pressure, anxiety, and smoking cessation. (Tr. 421.) He also complained of arthritis in his neck. Kinder

reported that he had always been anxious, he does not like large crowds, and he avoids going to places like Wal-Mart. *Id.* Upon examination, Ms. Arnzen noted tightness in the paraspinal muscles in the cervical spine, with no sensory or motor deficits. (Tr. 422.) She diagnosed Kinder with tobacco use disorder, generalized anxiety disorder, and cervicalgia. *Id.* Ms. Arnzen prescribed Buspar[2] and medication to assist with smoking cessation. *Id.* On May 15, 2013, Ms. Arnzen noted that Kinder appeared more "settled," than his last appointment, and that the Buspar was helping him. (Tr. 419.) On physical examination, Ms. Arnzen noted "limited range of motion due to back pain." (Tr. 420.) The next month, Kinder complained of nausea due to the smoking cessation medication. (Tr. 417.) Upon physical examination, Ms. Arnzen noted tightness in the paraspinal muscles in the lumbar spine and straight leg raise positive at thirty degrees. (Tr. 418.) She diagnosed tobacco use disorder, cervicalgia, and back pain. *Id.* In July 2013, Ms. Arnzen stated that Kinder had a history of anxiety and social phobias but was "doing well on his current treatment." (Tr. 415.) Upon physical examination, Ms. Arnzen noted "good" range of motion of the shoulders, spine, hips, knees and ankle; no back pain; no leg pain; no tenderness; and a normal neurologic exam. (Tr. 415-16.) She assessed anxiety and prescribed Valium.[3] (Tr. 416.) At Kinder's next visit, in September of 2013, he complained of recent onset of headache with occasional nausea. (Tr. 413.) Upon examination, Ms. Arnzen noted "chronic back pain," no sensory or motor deficits, and appropriate mood and affect. (Tr. 414.) She diagnosed migraine, anxiety, and allergic rhinitis. *Id.* In October of 2013, Kinder complained of occasional severe headaches and anxiety. (Tr. 411.) Upon physical examination, Ms. Arnzen noted "good" range of motion of the shoulders, spine, hips, knees, and ankles; no back

---

[2]Buspar is indicated for the treatment of anxiety. *See* WebMD, http:// www.webmd.com/drugs (last visited March 20, 2017).
[3]Valium is indicated for the treatment of anxiety. *See* WebMD, http:// www.webmd.com/drugs (last visited March 20, 2017).

or leg pain; no tenderness; and a normal neurological exam. (Tr. 412.) She assessed anxiety and migraines. *Id.* On November 11, 2013, Kinder complained of anxiety. (Tr. 409.) Upon examination, Ms. Arnzen noted tightness in the paraspinal muscles in the lumbar spine, and Kinder's complaints of anxiety. (Tr. 410.) She diagnosed anxiety and tobacco use disorder. *Id.* On December 9, 2013, weeks before Ms. Arnzen authored her opinions, Kinder complained of anxiety, especially in social situations. (Tr. 407.) No musculoskeletal examination findings were noted, and Ms. Arnzen noted only "admits to anxiety" under the psychiatric findings. (Tr. 406-07.)

The undersigned finds that the ALJ provided sufficient reasons for discrediting Ms. Arnzen's opinions. First, as the ALJ noted, Ms. Arnzen did not connect any of her opinions to the medical evidence. Rather, she provided opinions in a checklist form without citing to any of the medical evidence. *See Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014) (holding that an ALJ may discount a conclusory medical opinion).

Second, Ms. Arnzen's opinions are not supported by her treatment notes. The ALJ pointed out that the medical findings reveal mostly normal findings on examination, with only mild to moderate abnormalities noted. For example, Ms. Arnzen consistently noted no sensory or motor deficits, and noted good range of motion of the spine and no back pain on two visits. Ms. Arnzen's findings of occasional tightness in the paraspinal muscles of the cervical spine, limited range of motion due to pain on one occasion and chronic back pain on one occasion can accurately be described as only mild to moderate findings. Although Ms. Arnzen did note a positive straight leg raise test at thirty degrees on one occasion, in June 2013 (Tr. 418.), the next month Ms. Arnzen found Kinder had "good" range of motion of the shoulders and spine, "no back pain," no tenderness, and a normal neurological exam (Tr. 415-16). As to Kinder's mental impairments,

Ms. Arnzen frequently noted Kinder's complaints of anxiety, especially with regard to social situations. She did not, however, note any findings on mental examination other than Kinder's reports of anxiety.

In sum, Ms. Arnzen's treatment notes do not support the presence of extreme physical and mental limitations. The ALJ adequately explained how the record did not support Ms. Arnzen's opinions. Thus, the ALJ did not err in granting little weight to these opinions.

The ALJ concluded that Kinder had the RFC to perform a limited range of light work. Specifically, she found that Kinder had the following additional limitations: can occasionally climb ramps and stairs, and crouch; should never climb ladders, ropes, or scaffolds; should never kneel or crawl; should avoid concentrated exposure to vibration and hazards such as unprotected heights and dangerous machinery; should avoid moderate exposure to irritants such as fumes, odors, strong chemicals, and paint; can perform simple, routine tasks in a low stress work environment with only occasional contact with supervisors, co-workers, and the general public; only occasional workplace changes; and is able to sit or stand for one to three minutes every hour while remaining at his workstation. (Tr. 17.)

The ALJ explained that the above RFC takes into consideration "the combined effects of the claimant's lumbar and cervical spinal disorder and his occasional headaches." (Tr. 19.) She stated that, by avoiding irritants, Kinder will be able to avoid potential triggers for headaches. *Id.* Allowing him to stand or sit for one to three minutes each hour "will allow him to stretch his back in case he gets any muscle tightness during the day." *Id.* The ALJ further stated that "[l]imiting an individual to light work presumes serious limitations; this limitation plus the other limitations in the residual functional capacity take into consideration all the medical findings; and all opinions have been considered." (Tr. 20.)

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001); *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of his limitations. *Donahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. §§ 404.1545, 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. *Lauer,* 245 F.3d at 704. An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7.

Kinder argues the ALJ erred in giving little weight to Ms. Arnzen's opinions, the only opinion of record addressing Kinder's limitations. He also argues that the ALJ improperly discounted his subjective complaints. Kinder contends that the ALJ's RFC assessment was not based on substantial evidence. The Commissioner argues that specific medical opinion evidence is not required to support an RFC determination, and that the ALJ performed a proper credibility analysis.

The Eighth Circuit has considered whether the "some medical evidence" that is required to support an RFC finding must include a medical opinion that specifically addresses the claimant's work-related limitations. *See Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (rejecting argument that ALJ improperly concluded "on her own" that the claimant could lift 20 pounds occasionally and 10 pounds frequently because the record did not include supporting medical opinion; instead finding physicians' observations that claimant had normal muscle strength and

mobility constituted "substantial medical evidence" supporting the RFC finding). Although an RFC must be based upon "some medical evidence," there is no requirement that the RFC align with, or be based upon, a specific medical opinion of record. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (observing that ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians); *Halverson v. Astrue*, 600 F.3d 922, 933-34 (8th Cir. 2010) (holding that medical opinion evidence was not necessary to support the RFC where the ALJ considered the medical records, the claimant's statements, and other evidence in making the RFC determination); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (even though RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner). The ALJ is required to rely upon medical evidence, but not medical opinion evidence. *See Martise*, 641 F.3d at 927.

The ALJ in this case properly relied on "some medical evidence" to support his RFC finding. The ALJ considered the record evidence as a whole, including the findings of Ms. Arnzen discussed above. The ALJ also discussed the results of imaging, and the findings on examination of Kinder's treating pain management physician, Alfredo S. Romero, M.D. (Tr. 18-19.)

Kinder underwent an MRI of the lumbar spine on October 18, 2011, which revealed mild disc degeneration at L1-L2 to L4-L5; a bulging disc at L3-L4 with small left foraminal protrusion without definite root impingement; a very small central L5-S1 protrusion with mild facet hypertrophy; and disc bulging and facet hypertrophy at L4-L5. (Tr. 294.) Kinder underwent an MRI of the cervical spine on January 8, 2013, which revealed broad left paracentral protrusion at C6-7 with sac effacement and possible C7 root impingement; a small left central protrusion at

C7-T1, with mild facet arthropathy and foraminal stenosis; central bulging disc at C4-5 and facet arthropathy; and mild to moderate multilevel facet arthropathy.   (Tr. 291.)

Dr. Romero treated Kinder for his back and neck pain from December 2012 through June 2014.   (Tr. 306-82, 428-91.)   Upon examination in December 2012, Dr. Romero noted a normal gait and station, and stated Kinder was able to undergo exercise testing and participate in an exercise program.   (Tr. 376.)   Kinder had mild to moderate tenderness of the cervical spine, with normal muscle strength, reflexes, and sensation; moderate tenderness of the lumbar spine, with full range of motion; and normal strength, reflexes, and sensation.   (Tr. 376-77.)   Dr. Romero assessed lumbar intervertebral disc disorder without myelopathy; tobacco dependence; and cervicalgia.   (Tr. 377.)   He prescribed Hydrocodone-Acetaminophen[4] and Meloxicam.[5]   *Id.* Dr. Romero's findings remained unchanged in January 2013.   (Tr. 379-81.)   Dr. Romero performed a medial branch block[6] with steroids on January 31, 2013.   (Tr. 364.)   He noted that Kinder's history and physical examinations were consistent with facet pain and no neurological deficit.   *Id.*   In February 2013, Dr. Romero noted moderate tenderness around the facet joints of the cervical and lumbar spine, Kinder was "symptomatic" during range of motion testing of the cervical spine, and reported mild pain with flexion and extension of the lumbar spine; but his gait was normal, and his neurologic exam was normal.   (Tr. 358.)   Kinder reported that his physical

---

[4]Hydrocodone-Acetaminophen, or Vicodin, is indicated for the relief of moderate to moderately severe pain.   *See Physician's Desk Reference ("PDR")*, 1918 (70th Ed. 2016).
[5]Meloxicam is a nonsteroidal anti-inflammatory drug indicated for the treatment of arthritis.   *See* WebMD, http:// www.webmd.com/drugs (last visited March 20, 2017).
[6]A procedure in which an anesthetic is injected near small medial nerves connected to a specific facet joint.   The procedure is primarily diagnostic, meaning that if the patient has the appropriate duration of pain relief after the medial branch nerve block, then he or she may be a candidate for a subsequent procedure-called a medial branch radiofrequency ablation-for longer term pain relief. *See* Spine-Health, http://www.spine-health.com/treatment/injections/medial-branch-nerve-blocks (last visited March 20, 2017).

functioning was "better," his family relationships were normal, his social relationships were "good," his mood was "ok," and his overall functioning was "better." (Tr. 359.) Kinder underwent a lumbar medial branch block on March 8, 2013. (Tr. 354.) On March 15, 2013, Dr. Romero found that Kinder's gait was normal, he had moderate tenderness to palpation of the cervical spine and lumbar spine, was symptomatic during range of motion testing of the cervical spine, had mild pain on range of motion of the lumbar spine, and his neurologic and psychiatric exams were normal. (Tr. 350-51.) Kinder underwent lumbar medial branch blocks on March 22, 2013, and April 5, 2013. (Tr. 347, 343.) On April 12, 2013, Kinder's gait was normal; his cervical range of motion was symptomatic, with no tenderness; mild pain was noted with flexion and extension of the lumbar spine, and moderate tenderness around the facet joints was noted; and his neurologic and psychiatric exams were normal. (Tr. 338-39.) Kinder's physical functioning was noted as "better," his social relationships were "good," his mood was "ok," and his overall functioning was "better." (Tr. 339.) Dr. Romero indicated that Kinder's medications were helping and his pain was tolerable. *Id.* Kinder underwent a lumbar medial branch radiofrequency ablation[7] on May 2, 2013. (Tr. 334.) On May 10, 2013, Kinder's gait was normal; mild tenderness of the facet joints from C3-7 was noted, and Kinder was symptomatic with left to right rotation of the cervical spine; moderate tenderness around the facet joints around L1-L5 and mild pain with flexion and extension of the lumbar spine was noted; and Kinder's neurologic and psychiatric exams were normal. (Tr. 331-32.) His physical and overall functioning were "better." (Tr. 332.) Kinder underwent another medial branch radiofrequency ablation procedure on May 30, 2013. (Tr. 327.) On June 7, 2013, Kinder's examination findings

_____

[7]A minimally invasive procedure whereby heat generated by radio waves is used to target specific nerves and temporarily interfere with their ability to transmit pain signals. *See* Spine-Health, http://www.spine-health.com/treatment/injections/radiofrequency-ablation-procedure (last visited March 20, 2017).

remained unchanged.   (Tr. 321-22.)   Kinder underwent a cervical epidural injection on June 20,

2013.   (Tr. 318.)   On July 8, 2013, Dr. Romero noted that Kinder's medications were helping and

managing his pain, and were improving his daily functioning, physical activities, and sleep.   (Tr.

316.)   Kinder underwent a second cervical epidural injection on July 18, 2013.   (Tr. 313.)   On

August 6, 2013, Kinder's gait was normal; he had mild tenderness to the facet joints of the cervical

spine, and was symptomatic with left to right rotation of the cervical spine; he had moderate

tenderness around the facet joints around L4-L5 to the right side, and pain with extension of the

lumbar spine; and his neurologic and psychiatric exams were normal.   (Tr. 309-10.)   Kinder's

physical functioning and overall functioning were described as "better."   (Tr. 310.)   On

September 6, 2013, Dr. Romero stated that Kinder's medications were helping and managing his

pain; and were improving his daily functioning, physical activities, and sleep.   (Tr. 307.)   Dr.

Romero continued to note similar findings on examination, and continued to treat Kinder's pain

with cervical medial branch blocks and cervical medial branch radiofrequency ablations through

June 2014.   (Tr. 428-91.)

Despite Kinder's allegations of difficulty standing and walking, Dr. Romero found that he

had a normal gait on examination.   Dr. Romero noted mild to moderate pain or tenderness in the

cervical and lumbar spine on examination.   The ALJ pointed out that imaging did not reveal any

significant cervical or lumbar nerve root impingement, and that Dr. Romero suggested Kinder had

findings consistent with facet pain rather than nerve root compression.   (Tr. 18.)   Dr. Romero

also consistently noted Kinder's neurologic examination was normal.   In addition, the ALJ

pointed out that Dr. Romero reported that Kinder's medication was effective in relieving his pain

and improving his ability to function.   *Id.*   The ALJ nevertheless considered Kinder's complaints

of pain and use of pain medication and limited his RFC to a restricted range of light exertional activity.

With regard to Kinder's mental impairments, the ALJ noted that Ms. Arnzen and Dr. Romero both routinely found that Kinder's mental status examination was normal.  (Tr. 19.)  The ALJ adequately accounted for Kinder's complaints of anxiety and difficulty being around people in limiting him to simple work in a low stress environment with only occasional workplace changes; and with only occasional contact with supervisors, co-workers, and the general public.

The Court concludes that the ALJ did not err in finding that Kinder retained the RFC to perform a limited range of light work.   The ALJ's RFC determination was supported by substantial evidence despite the fact that it did not rely upon any medical opinion evidence.

The ALJ also properly considered the credibility of Kinder's subjective complaints in determining his RFC.   In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).   The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole.  *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)).   The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions.  *Id.* (citing *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995)).   The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported.  *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

The ALJ first noted that there were inconsistencies between Kinder's allegations of total disability, and the medical record evidence. (Tr. 18.) An ALJ may consider the lack of objective medical evidence supporting a plaintiff's subjective complaints as one factor in assessing credibility. *Forte v. Barnhart,* 377 F.3d 892, 895 (8th Cir. 2004). While some medical evidence in the record supports Kinder's complaints of back and neck pain, the medical evidence as a whole belies Kinder's allegations to the extent he claims disabling limitations. As previously noted, physical examinations revealed a normal gait, mild to moderate pain and tenderness, no sensory or motor deficits, and normal neurologic examinations. (Tr. 18.) The ALJ pointed out that imaging revealed degenerative changes but no significant nerve impingement. *Id.*

The ALJ also stated that Kinder's medication is effective in relieving his pain and improving his ability to function. (Tr. 18.) This finding is supported by the records of Dr. Romero discussed above. Conditions which can be controlled by treatment are not disabling. *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010)); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009); *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

With regard to Kinder's mental impairments, the ALJ stated that Ms. Arnzen noted Kinder's complaints of anxiety, but both Ms. Arnzen and Dr. Romero found that he had a normal mental status exam. (Tr. 19.) He pointed out that Ms. Arnzen found that Kinder was anxious on only one occasion, in January of 2014. (Tr. 405.) The ALJ also stated that the medication Ms. Arnzen prescribed for Kinder was effective in controlling his anxiety. (Tr. 19, 415, 419.)

The ALJ further found that Kinder's work record was characterized by breaks in reported income and minimal income during periods in which he did not allege disability. (Tr. 19.)

*Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (claimant's credibility lessened when considering sporadic work record reflecting relatively low earnings and multiple years with no reported earnings). Although Kinder had a fairly steady work record prior to 2006 (Tr. 222), he testified that he quit working in 2006 due to "a reduction in force." (Tr. 35.) Thus, the ALJ accurately found that Kinder's work record detracted from his credibility. *See Medhaug*, 578 F.3d at 816–17 (it is relevant to a claimant's credibility that she stopped working for reasons other than her medical condition).

The ALJ discussed Kinder's daily activities. (Tr. 18.) Kinder testified that he lived by himself, he tries to perform some "light housework," prepares meals, and shops for groceries, but does not do much else. (Tr. 16, 46-48.) Kinder further testified that he does not like being around people or being in crowds. (Tr. 50.) The ALJ found that, although Kinder described activities that were fairly limited, this degree of limitation could not be verified. (Tr. 18.) She further stated that it was difficult to attribute that degree of limitation to Kinder's medical condition in light of the medical findings previously discussed. (Tr. 18-19.) Kinder argues that the ALJ improperly found that his testimony regarding his daily activities could not be verified. The ALJ, however, explained that Kinder's limited daily activities were outweighed by the other factors discussed in his credibility analysis, such as the lack of objective findings to support disabling limitations, Kinder's work record, and the effectiveness of his medications. (Tr. 19.)

In sum, the ALJ's credibility findings were consistent with *Polaski* and supported by substantial evidence in the record as a whole. A review of the entire record demonstrates that the ALJ did not rely solely upon any one of the factors in the credibility analysis. Rather, the ALJ considered several factors in evaluating Kinder's credibility, and found that Kinder's testimony regarding disabling limitations was not entirely credible. "If the ALJ discredits a claimant's

credibility and gives a good reason for doing so, [the court] will defer to its judgment even if every factor is not discussed in depth." *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011).

## <u>Conclusion</u>

For all of the foregoing reasons, Kinder's allegations that the ALJ erred are unavailing. Kinder was afforded a full and fair opportunity to present his claims, and the ALJ's ultimate decision did not fall outside the available "zone of choice." *Buckner*, 646 F.3d at 556. It must therefore be affirmed. Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

Dated: <u>March 30, 2017</u>

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE